**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DAVIE L. JONES, JR.,**

        **Petitioner,**

                                       **Case No. 1:04-cv-309**

**v.**                                     **Hon.  Wendell A. Miles**

**KURT JONES,**

        **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

        Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

        **I.**        **Background**

        This case arose from the January 7, 1998 shooting death of Duane Smith in Muskegon, Michigan.  On August 9, 1999, following a jury trial in the Muskegon County Circuit Court, petitioner was convicted of second-degree murder, MCL § 750.317, armed robbery, MCL § 750.529, and possession of a firearm during the commission of a felony MCL § 750.227b.  The trial court sentenced him as a second habitual offender, MCL § 769.10, to enhanced, concurrent prison terms of twenty-five to seventy-five years for the murder conviction and twenty to fifty years for the robbery conviction, and a consecutive two-year term for the felony-firearm conviction.

        Petitioner has an extensive procedural history of post-conviction proceedings. Petitioner, through counsel, raised the following issues in his direct appeal to the Michigan Court of Appeals:

I.      Should [petitioner's] conviction be reversed because the trial court either abused its discretion or erred in ruling on the admission of evidence:

    (A)     The in court identification of [petitioner].
    (B)     Evidence of a co-defendant's trial and conviction.
    (C)     Impeachment of [petitioner] with prior narcotics possession.
    (D)     Denied a witness the right to consult with his counsel.
    (D)     Evidence of [petitioner's] flight.
    (E)     Admission of an out of court statement of a co-conspirator.

And did the cumulative effect of such decisions deny [petitioner] his right to due process and a fair trial?

II.     Should [petitioner's] convictions be reversed due to prosecutorial misconduct in forcing a witness to testify, improperly [sic] questioning of [petitioner] over the use of possible aliases, flight, and that the cumulative effect of these prosecutorial errors denied [petitioner'] right to due process and fair trial?

*See* docket no. 27.

Petitioner filed a supplemental *pro se* brief raising the following additional issues (in his words):

III.    [Petitioner's] Fifth, Sixth, and Fourteenth Amendment constitutional rights were violated where there was insufficient evidence to convict [petitioner] of second degree murder, armed robbery, and felony firearms.  Where the trial court abused its discretion in erroneously admitted evidence to withstand a directed verdict of acquittal:

    (A)     Admission of crime scene and autopsy photographs; the in-court and photographic line up identification of [petitioner];
    (B)     Admission of Malcolm Sharkey's out-of-court statement to Detective John Workman as an excited utterance exception to heresay.
    (C)     Admission of Non-Testifying co-defendant; William Harris's out of court statement.
    (D)     Admission of an out-of-court statement by an un-endorsed witness.
    (E)     Admission of belatedly endorsed res-gestae witness.

IV.     [Petitioner's] Fifth, Sixth, and Fourteenth Amendment constitutional right to due process of law was denied: Where the errors and constitutional

deprivations that riddled his trial individually and cumulatively denied him the right of a fundamental fair trial by an impartial jury.

(A) Introduction of irrelevant evidence and [petitioner's] association with guilty William Harris;

(B) Questioning by prosecution of [petitioner's] post-arrest silence;

(C) Questioning and comments by prosecution of [petitioner's] religious opinions;

(D) Denial to impeach a prosecution witness; Geoffrey Williams, with a prior narcotics conviction;

(E) Denial to strike prosecution witness, Dorikio Piggue's testimony, due to prosecutorial misconduct.

*See* Petition (docket no. 1).[1]

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Jones*, No. 221690 (Mich. App. Oct. 26, 2001).

Petitioner filed a delayed application for leave to appeal to the Michigan Supreme Court. In this application, petitioner presented the two issues raised in his *pro se* supplemental brief, as well as the following two issues not presented in the Michigan Court of Appeals:

V. [Petitioner] was denied his Sixth and Fourteenth Constitutional Amendment rights to the effective assistance of appellate counsel and due process of law; where

(A) Mr. Rust [appellate counsel] failed to competently assist [petitioner] with the clerical assistance ordered in Administrative Order 1981-7; Section (5) and (11), in the preparation of [petitioner's] Standard 11 pro per supplemental brief.

(B) Mr. Rust failed to assert two obvious claims of ineffective counsel; where

---

[1] Petitioner's supplemental pro se brief does not appear in the Rule 5 materials.

3

       (1)     Trial counsel failed to object when reference was made at trial to [petitioner's] refusal to answer questions of police.

       (2)     Trial counsel failed to request the jury instructions CJI2d 4.4 for flight.

VI.    [Petitioner] was denied his Sixth Amendment Constitutional right to the effective assistance of trial counsel; where

       (A)    Mr. Potoskey [trial counsel] failed to object when reference was made at trial to [petitioner's] refusal to answer questions of police.

       (B)    Mr. Potoskey failed to request the jury instruction CJI2d 4.4 for flight.

The Michigan Supreme Court denied the delayed application for leave to appeal. *People v. Jones*, No. 120544 (Mich. May 29, 2002).

On April 28, 2003, petitioner filed a habeas petition pursuant to § 2254 seeking relief on the four issues raised in the Michigan Supreme Court, i.e., issues III, IV, V and VI, *supra*. *See Jones v. Price*, No. 1:03-cv-283. The court found that the two issues presented to the Michigan Supreme Court, i.e., issues V and VI, *supra*, were not fairly presented to the Michigan state courts and dismissed the petition without prejudice for lack of exhaustion. *Id.* (Opinion and Order, May 12, 2003).

On or about May 19, 2003, petitioner filed a motion for relief from judgment in state court pursuant to MCR § 6.500 et seq. *See* 6.500 Motion attached to Response as Exh. B. In this motion, petitioner sought relief from judgment on the grounds raised in issues V and VI, *supra*. *Id.* The Muskegon County Circuit Court summarized petitioner's motion as seeking relief on four grounds: (1) petitioner was denied effective assistance of appellate counsel because counsel failed

4

to provide clerical assistance to prepare petitioner's *in pro per* supplemental brief as required by Administrative Order 1981-7(5) and (11); (2) petitioner was denied effective assistance of appellate counsel because counsel failed to raise certain issues on appeal; (3) petitioner was denied effective assistance of trial counsel because of trial counsel's failure to object to evidence that petitioner refused to answer the questions of police; and (4) petitioner was denied effective assistance of trial counsel because counsel did not request the court to give the "flight" instruction. *People v. Jones*, Muskegon County Circuit Court No. 98-42937-FC (Opinion and Order, June 11, 2003). The court denied ground (1) pursuant to MCR 6.508(D)(3)(b) because petitioner failed to establish actual prejudice. *Id.* Specifically, the state court trial judge noted that "the last paragraph of the Michigan Court of Appeals decision dated October 26, 2002 establishes that the court did in fact review the issues raised by [petitioner's] *in pro per* brief even though those issues were not properly before the court, and those issues were rejected on the merits, not on procedural grounds." *Id.* (emphasis in original). The court denied ground (2) on the merits, noting that appellate counsel raised ten issues, and that counsel was not required to raise every conceivable issue on appeal. *Id.* Finally, the court denied grounds (3) and (4) pursuant to MCR 6.508(D)(3)(b) for failure to demonstrate actual prejudice. *Id.*

The Michigan Court of Appeals denied petitioner's application for leave to appeal pursuant to MCR 6.508(D). *People v. Jones*, No. 249298 (Oct. 29, 2003). Similarly, the Michigan Supreme Court denied the application for leave to appeal for failing to establish entitlement to relief under MCR 6.508(D). *People v. Jones*, No. 125102 (April 30, 2004).

On May 7, 2004, petitioner re-filed his habeas petition, raising the following issues:

I.      [Petitioner's] Fifth, Sixth, and Fourteenth Amendment constitutional rights were violated where there was insufficient evidence to convict [petitioner] of second degree murder, armed robbery, and felony firearms.  Where the trial court abused its discretion in erroneously admitted evidence to withstand a directed verdict of acquittal:

    (A)     Admission of crime scene and autopsy photographs.
            (1)  The  in-court  and  photographic  lineup identification of petitioner.
    (B)     Admission of Malcolm Sharkey's out-of-court statement to Detective John Workman,  as an excited utterance exception to hearsay.
    (C)     Admission of Non-Testifying co-defendant; William Harris' out of court statement.
    (D)     Admission of an out-of-court statement by an un-endorsed witness [LaTonya Burnett].
    (E)     Admission of belatedly endorsed res-gestae witness and her testimony.


II.     [Petitioner's] Fifth, Sixth, and Fourteenth Amendment constitutional right to due process of law was denied: Where the errors and constitutional deprivations that riddled his trial individually and cumulatively denied him the right of a fundamental fair trial by an impartial jury.

    (A)     Questioning by prosecution of [petitioner's] post-arrest silence.
    (B)     Questioning and comments by prosecution of [petitioner's] religious beliefs.
    (C)     Introduction  of  irrelevant  evidence  and  [petitioner's] association with guilty William Harris
    (D)     Denial to impeach a prosecution witness; Geoffrey Williams, with a prior narcotics conviction;
    (E)     Denial to strike prosecution witness, Dorikio Piggue's testimony, due to prosecutorial misconduct.


III.    Petitioner was denied his Sixth and Fourteenth Constitutional Amendment rights to the effective assistance of counsel and due process of law.

    (A)     Appellant [sic] counsel, Daniel J. Rust, failed to effectively assist  petitioner  with  the  clerical  assistance  ordered  in

6

Administrative Order 1981-7; Section (5) and (11), in the preparation of petitioner's Standard 11 pro per supplemental brief on appeal.

(B)   Appellate counsel, Daniel J. Rust, failed to assert two obvious claims of ineffective counsel; where

    (1)   Trial counsel failed to object when reference was made at trial to petitioner's refusal to answer questions of police.

    (2)   Trial counsel failed to request the jury instruction CJI2d 4.4 for flight.

IV.   Petitioner was denied his Sixth and Fourteenth federal constitutional right to the effective assistance of trial counsel.

(A)   Trial counsel, Jonathan B. Pototsky, failed to object when reference was made at trial to petitioner's refusal to answer questions of police.

(B)   Trial counsel, John B. Pototsky, failed to request the jury instruction CJI2d 4.4 for flight.

## II.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Petitioner has met the exhaustion requirement.

Where the state court has adjudicated a claim on its merits, the federal district court's

habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state

court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or

if the state court decided the case differently than a Supreme Court decision based upon a set of

materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v.*

*Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of

clearly established Federal law occurs "when the state court identified the correct legal principle

from the Supreme Court but unreasonably applied the principle to the facts of the case before it."

*Id.*

A determination of a factual issue by a state court is presumed to be correct.  28

U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness

by clear and convincing evidence that the state court's determination was erroneous.  *Magana v.*

*Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

8

### III.     Petitioner's sub-issues I(A) through I(E), II(A) through II(E), and IV are barred by the doctrine of procedural default and not subject to habeas review.

#### A.     Procedurally defaulted claims

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, the Michigan Court of Appeals found that petitioner failed to adequately brief sub-issues I(A) through I(E) and II(A) through II(E), and these sub-issues were not properly before the court because petitioner failed to include them in his *pro se* brief's statement of questions presented.  *People v. Jones*, No. 221690, slip op. at 6.  *See People v. Miller*, 238 Mich. App. 168, 172, 604 N.W.2d 781 (1999) (court of appeals could properly decline to review a claim when an

9

appellant fails to include the claim in his statement of questions presented as required under MCR 7.212(C)(5)). Petitioner's failure to follow this rule of appellate procedure rule resulted in a procedural default with respect to these alleged errors.

In addition, the Michigan courts found that petitioner's claim of ineffective assistance of appellate counsel (Issue III) and trial counsel (Issue IV) were defaulted pursuant to MCR 6.508(D). Petitioner raised these issues in his motion for relief from judgment. Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these issues because he failed to meet the burden of establishing entitlement to relief under MCR. 6.508(D). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Canty v. Cason*, No. 02-2030, 2003 WL 152322 (6th Cir. Jan. 16, 2003); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) prevents habeas review. *See Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.

While MCR 6.508(D) precludes habeas review of the ineffective assistance of trial counsel claim, it does not preclude review of petitioner's ineffective assistance of appellate counsel claim. This is because state collateral review under MCR 6.500 *et seq.* is the first opportunity that a criminal defendant in Michigan has to address the issue of ineffective assistance of appellate counsel. *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004). *See Tucker v. Renico*, 317 F.Supp.2d 766, 773 (E.D. Mich. 2004) (observing that a petitioner's post-conviction motion filed

10

pursuant to MCR 6.500 is "the first practical opportunity to address the issue [of ineffective assistance of appellate counsel] in state court").  Accordingly, petitioner's claim of ineffective assistance of appellate counsel is properly before this court and subject to habeas review.

To summarize, petitioner's claims sub-issues I(A) through I(E), II(A) through II(E), and III are procedurally defaulted.  Accordingly, habeas review of these claims is precluded unless he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### B.    Ineffective assistance of appellate counsel as cause for the procedural default

Petitioner gives no explicit cause for the procedural default of these issues.  However, because petitioner claims that his appellate counsel was ineffective, the court will consider this claim as cause for the procedural defaults.  Ineffective assistance of counsel may constitute cause for excusing a procedural default, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *See Strickland v. Washington.* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court, set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741,

745 (6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983).  On the contrary,  "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52.  It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.*  As a general rule, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting  Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986). In this regard, appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis*, 351 F.3d at 745; *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Here, petitioner contends that appellate counsel was ineffective for failing to provide clerical assistance for petitioner's Standard 11 brief, and for failing to raise two "obvious claims" of ineffective assistance of trial counsel.

### 1.      Standard 11 brief

Michigan Supreme Court Administrative Order 1981-7(11) ("AO 1981-7(11)") authorizes the filing of so-called "Standard 11" pro se briefs as follows:

> When a defendant insists that a particular claim be raised on appeal against the advice of counsel, counsel shall inform the defendant that he or she has the right to present that claim to the appellate court in propria persona.  Should the defendant choose to proceed in such manner, counsel shall provide procedural advice and such clerical assistance as may be required to conform the defendant's pleadings for acceptability to the court.

Petitioner contends that appellate counsel did not provide him sufficient assistance under AO 1981-7(11), because the Michigan Court of Appeals declined to address the issues raised in the brief.  The

Court of Appeals addressed petitioner's claims of insufficient evidence and cumulative error as set forth in his Standard 11 brief. *See People v. Jones*, No. 221690, slip op. at 6. However, the appellate court declined to review several evidentiary arguments and other issues because petitioner failed to include them in his statement of the question presented. *Id.*

Petitioner provides no basis to support his ineffective assistance claim. AO 1981-7(11) only requires counsel to provide "procedural advice" and "clerical assistance" for filing the brief. This administrative order does not require appellate counsel to perform a substantive review of a criminal defendant's Standard 11 brief. Petitioner provides no authority, and this court has found none, which requires appellate counsel to formulate a defendant's statement of issues presented in a Standard 11 brief. The record reflects that petitioner's Standard 11 brief was properly filed in the Michigan Court of Appeals. Appellate counsel performed his duties required under AO 1981-7(11). Accordingly, the court rejects petitioner's claim that appellate counsel was ineffective with respect to the filing of petitioner's Standard 11 brief.

### 2.      Failure to raise ineffective assistance of trial counsel

Next, petitioner contends that appellate counsel was ineffective for failing to raise two issues of alleged ineffective assistance of trial counsel, i.e., trial counsel's failure to object when reference was made to petitioner's refusal to answer police questions, and trial counsel's failure to request the jury instruction CJI2d 4.4 for flight. The court rejects petitioner's contention for the reasons set forth below.

### a.      Testimony regarding petitioner's silence

Petitioner's claim arises from testimony given by Detective Dean Roesler of the Muskegon City Police. Detective Roesler testified that he went to Minnesota in November 1998 to arrest petitioner and return him to Michigan to face criminal charges. Trial Trans. III at 57-58. The following colloquy occurred between the prosecutor and Detective Roesler:

Q.      Sir, in October or sometime late in 1998, was there a time, sir, that you traveled to the State of Minnesota?

A.      Yes.  It was in November of 1998.

Q.      Thank you.  And sir, when you went there, did you go there with another officer?

A.      Yes, I did.

Q.      Who was that?

A.      Sargeant [sic] Workman.

[Unrelated discussion between trial judge and prosecutor.]

Q.      Sir, when you went to Minnesota, was that for the purpose of arresting Davie Jones?

A.      Yes.

Q.      And did you, in fact, arrive in the State of Minnesota?

A.      Yes, we did.

Q.      And where did you go in the State of Minnesota?

A.      To the airport.

Q.      And was Mr. Jones there?

A.      He was at -- being held at the Hennepin County Sheriff's Office in the -- that particular office was in the City of Minneapolis.

Q.      And did you go to Minneapolis - or to the sheriff's department and pick up Mr. Jones at that location?

A.      Yes, we did.

Q.      And sir, when you picked him up, did you bring him back to the State of Michigan to face these charges?

A.      Yes, we did.

Q.      Can you tell us, sir, when you initially had contact with [petitioner], did [petitioner] ask you a question?

A.      No.

Q.      Was there any discussion about the charge?

A.      Yes.  He was brought to us by the sheriff's deputies from the jail.  We identified ourselves and who we were, where we were from and told them we were there to arrest him on the murder out of Michigan and bring him back.

Q.      Did he ask you any question at that point?

A.      No.

*Id.* at 58-59.

After the court resolved objections regarding the form of certain questions, the testimony continued.

Q.      Did he [i.e., petitioner] say anything, sir?

A.       At the time that we identified ourselves and what our business was there?

Q.       The time that you told him you were there to arrest him on a murder charge?

A.      No.

Q.      When you told him you were there to arrest him on a murder charge, what was his demeanor when you told him that?

A.      Very calm, kind of blaise, I guess, okay, type of --

*Id.* at 59-60.

After the court addressed an objection to the form of the question, the testimony continued:

Q.      Sir, did he say anything at all after you informed him of the murder charges?

A.      Not in regards to that statement that we made to him.

*Id.* at 60.

Petitioner contends that the detective's testimony violated his constitutional rights because it raised the issue of his post-arrest silence.  In *Doyle v. Ohio*, 426 U.S. 610, 619-620 (1976), the Supreme Court held  that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment."  As later explained by the Sixth Circuit,  "[t]he goal of *Doyle* is to prevent

a jury from drawing inferences of guilt from a defendant's decision to remain silent after his or her arrest." *Gravley v. Mills*, 87 F.3d 779, 788 (6th Cir. 1996).

It does not appear to the court that the detective's testimony violated petitioner's due process rights. Detective Roesler's testimony explained the circumstances surrounding petitioner's return from Minnesota to face the criminal charges in Michigan. The detective did not attempt to interrogate petitioner or seek a statement from him. *See, e.g., United States v. McDowell*, No. 93-5466, 1994 WL 118077 at *5 (6th Cir. April 5, 1994)(the due process violation "occurs when an officer comments on the accused's silence or failure to offer an explanation at the scene after a *Miranda* warning has been given," because "[i]t is inherently unfair to tell a suspect that he has a right to remain silent and then use the silence to impeach an explanation that he offers at trial"). In addition, the detective's testimony was not presented to impeach petitioner's testimony; petitioner had not yet testified at the trial.

In his supporting memorandum, petitioner explains in some detail that he waived extradition from Minnesota, spent 56 days in the Hennepin County, Minnesota jail, and that he consulted with an attorney while in jail. Petitioner's Memo at 45-48. However, petitioner did not present these detailed facts to the jury. While petitioner repeatedly testified that "I turned myself in" to the authorities in Minnesota, petitioner refused to acknowledge that the authorities arrested him. Trial Trans. V at 57-58, 95-98. Ultimately, the trial judge had to direct petitioner to answer the prosecutor's question inquiring about his arrest. *Id.*

In addition, petitioner acknowledged that he broke his silence by writing a letter to the authorities proclaiming his innocence. Petitioner read the jury a letter which he wrote while in custody in Minnesota, describing how "God gave me a new life in Minnesota" and that he had a job, a possible career, and two daughters. *Id.* at 59-60. Petitioner also thanked God "that I was able to come in on my own, now [sic] knowing the violent measures that could have taken place because of me not knowing the result of a crime I didn't commit." *Id.* Petitioner wrote the letter to give the courts "my standing at that present time as in the frame of mind I was before I left for Minnesota

16

and I -- upon me arriving in Minnesota." *Id*. at 61.  Petitioner explained to the authorities that while in Minnesota, the community helped him realize that he "needed to put Christ in my life," and pursue "the values of becoming a young man, a father and a husband." *Id.* at 61.

This is not a case in which a police officer testified at length regarding the suspect's exercise of his right to remain silent immediately after his arrest.  In addition, petitioner had previously waived his right to remain silent when he wrote the authorities a letter announcing his innocence and proclaiming his religious conversion.  Under these circumstances, detective Roesler's brief testimony regarding petitioner's failure to ask questions during the extradition from Minnesota did not create an inference of guilt in violation of petitioner's due process rights.

### b.    Prosecutor's comment

Next, the prosecutor referred to petitioner's silence in closing arguments, stating that:

> When the officer arrested him, again in this situation, similar to the letter, like an innocent dove, he says: What am I charged with? They say: With murder, murder of Duane Smith.  Does he say why he couldn't do that.  He was silent.  Sometimes silence speaks volumes.

Trial Trans. VI at 39.

Because the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt," a prosecutor's comment regarding the accused's silence may rise to the level of prosecutorial misconduct requiring reversal on appellate review.  *Lundgren v. Mitchell*,  440 F.3d 754, 779 (6th Cir. 2006)  *quoting Griffin v. California*, 380 U.S. 609, 615 (1965).  However, the prosecutor's comments may amount to harmless error "when the state presents an otherwise compelling case of guilt and a review of the record as a whole shows that the jury verdict would have been the same."  *Lundgren*,  440 F.3d at 780 (citations and internal quotes omitted).

Here, the prosecutor's comment amounted to harmless error.  First, there was no evidence before the jury that petitioner was represented by counsel, had been given his *Miranda* warnings, or had exercised his right to remain silent when Detective Roesler arrested him in

17

Minnesota.  On the contrary, petitioner openly proclaimed his innocence in a letter sent to the authorities. Under these circumstances, petitioner appears to have waived his right to remain silent about the murder charges.  Second, as outlined in § IV. A., *infra*, petitioner's conviction was supported by substantial, if not overwhelming, evidence of guilt.

Based upon this "compelling case of guilt," the court concludes that the jury would have reached a guilty verdict absent the prosecutor's brief remark.  The prosecutor's remarks amounted to harmless error.  Appellate counsel had no reason to raise this issue as constituting the alleged ineffective assistance of trial counsel.  Accordingly, appellate counsel was not ineffective for failing to raise this meritless issue. *Willis*, 351 F.3d at 745; *Greer v. Mitchell*, 264 F.3d at 676.

### 2.     Failure to give a flight instruction

Next, petitioner contends that trial counsel was ineffective for failing to request a flight instruction.  Petitioner's trial counsel and the prosecutor agreed that they did not want the standard jury instruction regarding flight, CJI2d 4.4.  Trial Trans. V at 153.  This instruction provides as follows:

> (1) There has been some evidence that the defendant [tried to run away / tried to hide / ran away / hid] after [the alleged crime / (he / she) was accused of the crime / the police arrested (him / her) / the police tried to arrest (him / her) ].

> (2) This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt.

> (3) You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind.

*People v. Peoples*, No. 265481, 2007 WL 981612 at *2 (Mich. App. April 3, 2007).

Under Michigan law, jury instructions are viewed as a whole to determine if the trial court made an error requiring reversal.  *People v. Cain*, 238 Mich. App. 95, 127, 605 N.W.2d 28 (1999).  "Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v. Daniel*, 207 Mich.App. 47, 523 N.W.2d 830 (1994). With respect to the "flight instruction," Michigan courts have found that

trial counsel was not ineffective for failing to request this instruction when counsel could argue an exculpatory reason for the flight without specifically instructing the jury that flight could be evidence of guilt. *See, e.g., Peoples*, 2007 WL 981612 at *2 ("[p]resumably, trial counsel did not ask for the instruction, which would raise the question of defendant's consciousness of guilt, because counsel was able to argue an exculpatory reason for defendant's flight without instructing the jury that an inculpatory reason may have existed as well"); *People v. Barron*, No. 214637, 2000 WL 33391094 at *3 (Mich. App. Dec. 15, 2000) ("Although the trial court did not give a specific instruction explaining how the jury should treat evidence of flight or concealment, the jury was instructed generally on the use of circumstantial evidence. Further, the record does not show that evidence of flight or concealment was a controlling issue in the case.").

In closing argument, petitioner's trial counsel gave the jury an exculpatory reason for his move to Minnesota:

> [Petitioner] told us how he never fled to Minnesota, he never knew there was a warrant for his arrest. He moved back to Minnesota to be with his girlfriend. he never acted like a fugitive. He got a job, he was involved in the community, they used to go out and play basketball together. He paid taxes. Okay. So he didn't call his mom. He is a 23 year old man with a life of his own who didn't call his mother. What exactly does that prove?

Trial Trans. VI. at 15. Petitioner's testimony supported this argument. Petitioner testified that he had a past history of visiting Minnesota. He went to Minnesota in October of 1997 to visit a friend and met his wife at that time. Trial Trans. V at 49-50. Petitioner testified that he moved to Minnesota on January 16, 1998, and remained there until November 1998, when he turned himself into the police. *Id.* at 69, 97-98.

While the trial court did not give CJI2d 4.4, it instructed the jury to "think about all the evidence and the testimony and then decide what each piece of evidence means and how important you think it is." Trial Trans. VI at 52. The court instructed the jury that they "are free to believe all, none, or part of any person's testimony," and to consider questions such as "[a]ll in all, how reasonable does the witness' testimony seem when you think about all the other evidence in the

case?" *Id.* at 56-57. The court also discussed the use of direct evidence and circumstantial evidence. *Id.* at 58-59.

In his response to petitioner's arguments raised in the delayed application to appeal to the Michigan Supreme Court, the prosecutor pointed out that Michigan's flight instruction was not required in this case:

> The prosecutor did not argue [petitioner's] apparent attempt to evade detection by moving to Minnesota as evidence of [petitioner's] mental state. It was not a theory the prosecutor stressed. The jury instruction is not required when such evidence is admitted. Not requesting it was not an error. In any case, [petitioner] cannot show prejudice - he cannot show a reasonable probability that the giving of this instruction would have resulted in his acquittal. The evidence against him was extensive; evidence of his concealing his identity and moving to Minnesota was relatively insignificant. It logically follows that appellate counsel's failure to raise the issue did not constitute ineffective assistance of counsel.

Response to delayed application at 8 (docket no. 28).

The court agrees with the prosecutor's position. There is no question that the government's closing arguments referred to petitioner's testimony that he decided to leave for Minnesota on the same day that his murder warrant was issued. Trial Trans. V at 157-58; Trial Trans. VI at 32-33. However, these references constituted only a portion of the prosecutor's closing arguments. Petitioner's trial counsel presented the jury with an exculpatory reason for petitioner's move to Minnesota. Under these circumstances, it would be a reasonable trial strategy for petitioner's counsel to avoid re-enforcing the prosecutor's argument by requesting a specific instruction spoken by a judge to the jury stating that petitioner may have "tried to run away" or "tried to hide" in Minnesota after he was accused of the crime, because of "consciousness of guilt."

Appellate counsel had no reason to raise this issue as constituting the alleged ineffective assistance of trial counsel. Accordingly, appellate counsel was not ineffective for failing to raise this meritless issue. *Willis*, 351 F.3d at 745; *Greer v. Mitchell*, 264 F.3d at 676.

20

### C.      Fundamental miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a  "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted  to find him guilty beyond a reasonable doubt." *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.

Petitioner offers no new evidence that he is actually innocent of the crime for which he was convicted. Accordingly, he has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's sub-issues  I(A) through I(E), II(A) through II(E), and III are procedurally barred and not subject to habeas review.

### IV.      Petitioner's remaining claims are without merit.

### A.      Substantial evidence supports the convictions (Issue I)

Petitioner contends that his convictions for second-degree murder, armed robbery, and felony firearm are not supported by sufficient evidence, because he was not identified as the individual that assisted co-defendant William Harris in committing the crimes.  Petitioner concedes

that the crimes occurred, stating that the only issue before the court is the identification of the second

perpetrator.  Petitioner's Memo at 2.

The Michigan Court of Appeals addressed this claim as follows:

> Defendant next asserts that insufficient evidence established his identity as
> a participant in the crimes. Viewing the evidence in the light most favorable to the
> prosecution, we find abundant evidence supporting the jury's rational finding beyond
> any reasonable doubt that defendant committed the crimes for which he was
> convicted. *People v. Hoffman*, 225 Mich.App 103, 111; 570 NW2d 146 (1997).
> Defendant's cousin testified that defendant confessed to committing the crimes with
> [co-defendant] Harris. Two eyewitnesses, who identified defendant in court and in
> photographic lineups, testified that defendant was the perpetrator. Another witness
> placed defendant with Harris shortly before the crimes, and testified that when Harris
> commented about committing a robbery, defendant snickered. Yet another witness
> testified that he drove Harris and defendant to a location near the crime scene, and
> that at the time defendant was armed with a gun.

*People v. Jones*, No. 221690, slip op. at 6.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth

Amendment's Due Process Clause protects a criminal defendant against conviction "except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged." *Winship*, 397 U.S. at 364.  Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient

evidence supports a conviction if "after viewing the evidence in light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Id.* at 319 (emphasis added).  In determining whether sufficient evidence exists

to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting

inferences of fact in favor of the prosecution, and must defer to that resolution.  *Wright v. West*, 505

U.S. 277, 296-97 (1992).

The Michigan Court of Appeals applied the appropriate legal standard in determining

this issue, pointing out that three witnesses identified petitioner as one of the perpetrators of the

crime, and two witnesses linked petitioner with Will Harris shortly before the crime.

A review of the record indicates that compelling evidence was presented by these

witnesses.  Petitioner's cousin Geoffrey Williams, testified that petitioner showed Williams a copy

of a newspaper article about the crimes and told Williams:  that petitioner and Harris participated

in an armed robbery and murder; that petitioner held a shotgun during the robbery and murder; and that petitioner and Harris split the $700 stolen during the robbery. Trial Trans. IV at 158-85. Milton Davis testified that petitioner robbed him; that petitioner had a shotgun; and that he witnessed the murder of Duane Smith. Trial Trans. IV at 65-94, 100-131. Joseph Montgomery similarly identified petitioner and Harris as the perpetrators, and testified that Harris robbed him while holding a handgun. Trial Trans. II at 151-205. Duren Wyrick testified that petitioner accompanied co-defendant Harris 15 to 30 minutes prior to the robbery, that Harris indicated that he wanted to "hit a lick" (i.e., to rob something), and that petitioner "snickered" and gave "a little laugh" at Harris' comments. Trial Trans. III at 125-32, 136, 138-39, 142-43). Dorickio Piggee testified that he drove petitioner and co-defendant Harris to the area of the victim's home just before the robbery, that petitioner had a "rifle gun," and that petitioner asked to use Piggee's "gun." Trial Trans. III at 220-41. Viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have determined beyond a reasonable doubt that petitioner committed the robberies and murder. *See Jackson*, 443 U.S. at 319.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

## B.     Cumulative error (Issue II)

Next, petitioner contends that the cumulative effects of a number of trial errors denied him a fundamentally fair trial. The Michigan Court of Appeals addressed this issue as follows:

> Lastly, defendant contends that the cumulative effect of multiple trial errors requires a new trial. Having reviewed the record we conclude, however, that defendant was not denied a fair trial because no errors of consequence occurred and defendant suffered no serious prejudice from a combination of errors. *People v. Cooper*, 236 Mich.App 643, 659-660; 601 NW2d 409 (1999); *People v. Griffin*, 235 Mich.App 27, 46; 597 NW2d 176 (1999).

*People v. Jones*, No. 221690, slip op. at 6.

23

Petitioner's claim is without merit.  Distinct constitutional claims cannot be cumulated to provide a basis for habeas relief.  "Cumulative error" cannot form the basis of habeas relief under § 2254.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.), opinion corrected on denial of rehearing, 307 F.3d 459 (6th Cir. 2002) ("the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) ("[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief").  *See also, Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004). As the Sixth Circuit explained in *Gillard v. Mitchell*, 445 F.3d 883 (6th Cir. 2006):

> While we have recognized that "[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair," *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.1983), the "Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief," *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.2002) (italics added). Thus, the Ohio courts' determination is not contrary to, or an unreasonable application of, clearly established Federal law as determined by the United State Supreme Court because Gillard's individual assignments of error would not support habeas relief, and the cumulative effect thereof is likewise insufficient. *See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir.2002) (identical to case at bar).

*Gillard*, 445 F.3d at 898.

Petitioner has not demonstrated any constitutional error sufficient to support habeas relief.  However, even if he had demonstrated such errors, those errors could not cumulated to grant habeas relief under § 2254.  *Gillard*, 445 F.3d at 898.  Accordingly, petitioner cannot seek federal habeas relief on this issue.

### C.  Ineffective assistance of appellate counsel (Issue III)

Next, petitioner contends that appellate counsel was ineffective.  As the court previously discussed in § III.B, *supra*, petitioner's appellate counsel was not ineffective.  Accordingly, petitioner's claim should be dismissed.

### D.      *Crawford v. Washington*

Finally, petitioner amended his petition to include a citation of the "landmark confrontation clause decision in *Crawford v. Washington*," 541 U.S. 36 (2004) in his arguments for Issues I(B), (C) and (D), and II(C).  *See* docket no. 8.  It is unnecessary for the court to address petitioner's claim with respect to *Crawford*.  First, these three sub-issues are procedurally defaulted and not subject to federal habeas review.  Second, petitioner does not explain how the *Crawford* decision supports the habeas claims presented in these sub-issues.  Third, *Crawford* does not apply retroactively to this petition.  The Supreme Court recently held that its opinion in *Crawford* created a new rule of criminal procedure that cannot be applied retroactively in federal habeas corpus cases. *See Whorton v. Bockting*, -- U.S. --, 127 S. Ct. 1173 (2007).  Petitioner's direct appeal became final on August 27, 2002, ninety days after the Michigan Supreme Court issued its May 29, 2002 decision.  *See United States v. Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005) (a new rule of criminal procedure does not apply retroactively to cases already final on direct review, i.e., those cases in which a decision has been rendered on direct appeal and the 90-day period for seeking a writ of certiorari had expired).  The Supreme Court decided *Crawford* on March 8, 2004, long after petitioner's direct appeal became final. Accordingly, the new rule of criminal procedure announced in *Crawford* does not apply retroactively to this petition.

### V.      Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  June 11, 2007                                         /s/ Hugh W. Brenneman, Jr.
                                                             Hugh W. Brenneman, Jr.
                                                             United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).